[No. B193077. Second Dist., Div. Six. Jan. 22, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
HUGO VARGAS GARCIA, Defendant and Appellant.

## COUNSEL

Lynette Moore and William S. Mount, under appointments by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**—Appellant Hugo Vargas Garcia was convicted by jury of animal cruelty (Pen. Code, § 597, subd. (a))[1] and exhibiting a deadly weapon other than a firearm (§ 417, subd. (a)(1)). In a bifurcated proceeding, the jury found true allegations that appellant had suffered a prior serious felony conviction (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)) and had served three prior prison terms (§ 667.5, subd. (b)), with respect to both counts. The trial court sentenced appellant to a term of nine years in state prison consisting of an upper term of three years for violation of section 597, subdivision (a), doubled for the prior serious felony conviction (§ 1170.12, subd. (c)(1)), plus three consecutive one-year terms for the prior prison terms (§ 667.5, subd. (b)). The court sentenced appellant to 363 days in county jail for violation of section 417, subdivision (a)(1), to which the court applied 363 days presentence custody credit.

Appellant contends (1) that the trial court violated his constitutional right to due process by allowing him to represent himself while he was mentally incompetent; (2) that the court did not conduct a full evidentiary hearing on

---

[1] All statutory references are to this code unless otherwise stated.

the question of mental competence as required by due process and section 1368; (3) that appointed counsel rendered ineffective assistance when he did not insist on a full evidentiary hearing; and (4) that imposition of the upper term sentence for animal cruelty violated appellant's right to a jury trial. We affirm.

## FACTS

Appellant had a history of appearing at the homes of his family members and demanding money from them three to four times a day. Appellant was homeless and his family lived in one neighborhood. On November 26, 2005, appellant went to his sister's house. When she did not answer the door, he rattled the gate to the metal security fence that surrounded her porch. Appellant's nephew by marriage, James Ream, watched from a window next door. Ream's dog began barking. The dog was enclosed in Ream's yard by a wrought iron fence that it could not get over. Appellant said, "Fucking dog," pulled out a knife with a two- to three-inch blade and approached the dog. Appellant taunted the dog until it put its paws up on the fence, and when it did appellant reached over the fence and stabbed the dog between his eyes.

The knife stuck in the dog's forehead, and had to be surgically removed. The treating veterinarian testified that the knife penetrated bone, which would have taken tremendous force.

On the day after the dog was stabbed, James Ream was outside his house and saw appellant coming in his direction. Ream, who was an off-duty school police officer, put on an equipment belt with a gun, a baton, handcuffs and his badge. He told appellant that he was placing appellant under arrest as a suspect in a felony animal cruelty investigation. Appellant went inside his mother's house and came back out yelling at Ream, "I've got a knife, I got a knife for you." Appellant held up the knife and walked to within five to eight feet of Ream.

Appellant was initially charged with two felony counts: (1) animal cruelty (§ 597, subd. (a)), and (2) displaying a weapon to a police officer to resist arrest (§ 417.8). Appellant represented himself at the arraignment, the preliminary hearing, in pretrial proceedings, and for the first five days of a seven-day jury trial. At the time of his arraignment, the court explained to appellant that he was entitled to a court-appointed attorney without charge and explained the dangers of self-representation. The court urged him to accept counsel. Appellant waived counsel. The court accepted the waiver, finding that appellant was mentally competent, and that his waiver was knowing and voluntary. The court appointed standby counsel. Several times during pretrial proceedings the court again cautioned appellant of the dangers of self-representation and encouraged him to accept counsel.

Appellant took an active role in the proceedings. He moved to dismiss the charges against him pursuant to section 995, in response to which the court dismissed the section 417.8 felony count. A new misdemeanor count of exhibiting a deadly weapon other than a firearm was substituted. (§ 417, subd. (a)(1).) Appellant also filed a handwritten *Pitchess* motion. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].) The trial court found good cause to conduct an in camera review of Ream's personnel file, but found no discoverable information in it and denied the motion. Appellant filed a section 1538.5 motion to suppress the "investigating reports." The court explained that the only evidence seized during the arrest was a knife and asked appellant if he wanted to exclude the knife. Appellant stated that he did not want to suppress the knife, but he wanted to exclude "the charges." The court reminded appellant that the section 995 motion had previously been ruled upon, and denied the section 1538.5 motion. At trial, appellant made an opening statement, interposed objections and cross-examined witnesses. His cross-examinations were coherent, though lengthy and repetitive. As the trial progressed, he began to make disrespectful statements to the court. He used vulgar language and became hostile.

On the sixth day of trial, appellant relinquished his in propria persona privileges and standby counsel was appointed. Counsel declared that he had a doubt as to appellant's mental competence to stand trial. The court stated: "[B]ased on everything I have seen, it seems to me that what the defendant is doing is simply not wanting to participate any further in this case. It's not that he doesn't have the ability to, but I don't think that my opinion at this point really matters, unfortunately."

The court appointed a psychiatrist to evaluate appellant. First, the court asked defense counsel if that would be acceptable, and "[i]f not, you have the option to call somebody and see if they can do it quickly. Because if they can't, if they give us this two, three-week nonsense, I am going to look for somebody who can do it very quickly." Appellant requested his own doctor, and the court replied that it would have to be a doctor from the court's list. Neither appellant nor his counsel requested an examination by a doctor from the list.

The court-appointed psychiatrist interviewed appellant for about 45 minutes, and reported to the court his opinion that appellant was competent to stand trial. The psychiatrist stated that appellant had "no cognitive impairment which would prevent him from understanding what the case was all about, what the charges are all about," was able to describe his role and the role of the defense attorney and the prosecutor, and understood what had occurred so far in the trial. He stated that appellant was frustrated, and this explained his behavior in the courtroom, but that this did not rise to the level

of a mental illness. According to the psychiatrist, appellant provided information, understood his questions, and could provide information to his attorney. He recommended that the court issue a medical order for medication for depression.

On cross-examination, the psychiatrist testified that appellant had been on suicide watch one month prior and was not currently in the psychiatric observation unit or on suicide watch. Previously, appellant had been in psychiatric housing in a prison and was an outpatient while on parole. Appellant told the court-appointed psychiatrist that a previous psychiatrist had diagnosed appellant as schizophrenic and prescribed psychotropic medications, which appellant had last taken eight months earlier. The court-appointed psychiatrist disagreed with the previous psychiatrist's diagnosis and testified that appellant had no symptoms of schizophrenia and did not require psychotropic medications. The court-appointed psychiatrist stated, "I don't believe he is oblivious to what is happening, but I think he perceives the legal system, having been through it so many times, being in prison, as not a—a system which he cherishes and not a system he enjoys, and he feels—he feels unfairly . . . singled out for a prosecution for what he believes to be an insignificant crime."

The court asked counsel if there was anything else they wished to address with respect to competency. Both counsel declined and submitted. The court stated that the psychiatrist's opinion was "consistent with the court's own observations of the defendant that as the trial has gone along he has gotten more frustrated and angry but that I don't believe—in other words, I agree with [the psychiatrist], and I accept his conclusion that the defendant is not incompetent to stand trial but that his behavior is based on other things."

The jury returned the following day, and the trial proceeded. Appellant chose not to testify and the defense rested. The jury reached a verdict of guilty on both charges. In a subsequent bifurcated proceeding, the jury found true each allegation that appellant had suffered a prior conviction and prior prison terms.

## DISCUSSION

### The Competency Determination

Appellant contends that a full evidentiary hearing on the question of his competence was required both by section 1368 and by his constitutional right to due process. We reject his contention.

Section 1368 requires a competency hearing when the court declares a doubt as to competence. (§ 1368, subd. (a).) The court did not declare a

doubt. A declaration of doubt by counsel alone is not sufficient to trigger a statutory right to a competency hearing. Section 1368 is written in terms of whether a doubt arises in the mind of the trial judge and is then confirmed by defense counsel. (*People v. Welch* (1999) 20 Cal.4th 701, 738 [85 Cal.Rptr.2d 203, 976 P.2d 754].) "If . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall . . . inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent." (§ 1368, subd. (a).) ■ If, in response, "counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing." (*Id.*, subd. (b).) "A doubt in the mind of counsel, or anyone else other than the trial court is not sufficient to require a hearing on the issue of sanity under the statute." (*People v. Wade* (1959) 53 Cal.2d 322, 336 [1 Cal.Rptr. 683, 348 P.2d 116], disapproved on other grounds in *People v. Carpenter* (1997) 15 Cal.4th 312 [63 Cal.Rptr.2d 1, 935 P.2d 708].)

■ Due process requires a competency hearing only if the court is presented with substantial evidence of incompetence. (*People v. Lawley* (2002) 27 Cal.4th 102, 136 [115 Cal.Rptr.2d 614, 38 P.3d 461].) There was no substantial evidence of incompetence. The opinion of counsel alone does not constitute substantial evidence. (Cal. Rules of Court, rule 4.130(b)(2).) Evidence is substantial if it raises a reasonable doubt about the defendant's competence. (*Lawley*, at p. 131.) ■ A person is incompetent to stand trial "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) Appellant identified the charges against him in his opening statement. His motions were partially successful. At one point, he told the court that he was presenting an argument because if he did not make a record he would not be able to raise the issue on appeal. He corrected the court on a sentencing calculation. He requested a "jury with twelve." His cross-examinations demonstrated a full understanding of the allegations against him.

■ A trial court may appoint a psychiatrist to conduct a summary evaluation to help it decide whether to declare a doubt. (*People v. Visciotti* (1992) 2 Cal.4th 1, 35 [5 Cal.Rptr.2d 495, 825 P.2d 388].) We reject appellant's argument that, pursuant to *People v. Pennington* (1967) 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942], due process required more than a summary evaluation. *Pennington* holds that if there is substantial evidence of incompetence, the resulting due process right to a competency hearing is not satisfied by a summary evaluation. In our case, there was no substantial evidence of incompetence and no due process right to a competency hearing.

■ After consulting with an expert, the trial court concluded that appellant was competent to stand trial. We will not disturb the finding because substantial and credible evidence supports it. (*People v. Hightower* (1996) 41 Cal.App.4th 1108, 1111 [49 Cal.Rptr.2d 40].) It is statutorily presumed that a defendant is mentally competent unless he proves by a preponderance of the evidence that he is mentally incompetent. (§ 1369, subd. (f).) The record supports the trial court's observation that defendant was able, but unwilling to participate. ■ "A trial court may appropriately take into account its own observations in determining whether the defendant's mental state has significantly changed during the course of trial." (*People v. Lawley, supra,* 27 Cal.4th at p. 136.)

## *Self-representation*

Appellant contends that the trial court violated his right to due process by permitting him to represent himself. He contends he lacked the mental competence to knowingly and intelligently waive counsel. We disagree.

■ Substantial evidence supports the trial court's finding that appellant was competent to stand trial. A defendant is competent to waive counsel if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1364 [65 Cal.Rptr.2d 145, 939 P.2d 259].) Appellant demonstrated a rational understanding of the proceedings and the charges against him from the time of arraignment through trial.

## *Ineffective Assistance of Counsel*

Appellant contends that his counsel rendered ineffective assistance because counsel did not insist upon a full evidentiary competency hearing, did not obtain an independent psychiatric examination, and did not subpoena witnesses and medical records pertaining to appellant's mental health history. We disagree. Appellant's counsel was well within professional norms when he accepted the opinion of the court-appointed psychiatrist that appellant's behavior was not indicative of mental incompetence.

■ A defendant claiming ineffective assistance of counsel must establish that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that the outcome would have been different absent counsel's ineffective representation. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674, 104 S.Ct. 2052].) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, the claim on

appeal must be rejected unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." (*People v. Lawley, supra*, 27 Cal.4th at p. 133, fn. 9.)

■ If an attorney has doubts about his client's competence but those doubts are not supported by medical reports or substantial evidence, he does not render ineffective assistance by forgoing an evidentiary hearing. (*People v. Hill* (1967) 67 Cal.2d 105 [60 Cal.Rptr. 234, 429 P.2d 586].) Appellant's counsel was not required to conduct further investigation after the court-appointed expert resolved his doubts.

Appellant argues that his counsel should have conducted an independent investigation into competency. He relies on *People v. Corona* (1978) 80 Cal.App.3d 684 [145 Cal.Rptr. 894], which is inapposite. In *Corona*, defendant killed 25 migrant workers and buried them in a field, each in a peculiar pose. During trial, he suffered from hallucinations and delusions resulting from schizophrenia, was under heavy doses of antipsychotic medications and reported that he was speaking with the devil. Defense counsel opposed a competency hearing and forbade further psychiatric evaluations (*id.* at p. 714) in order to protect an exclusive book deal he had reached with his client (*id.* at p. 720). Counsel also promised the jury he would present certain testimony and then presented no defense. The court reversed the judgment of conviction based on ineffective assistance of counsel.

In our case, counsel had no conflicting financial interest and did request a competency hearing. Appellant displayed no paranoia or delusions at trial. He displayed increasing anger, frustration and disrespect to the court, but he also displayed understanding of the proceedings and the charges against him.

### Upper Term Sentence

■ The trial court imposed the upper term sentence for the animal cruelty conviction. It identified aggravating circumstances that included a lengthy criminal record. Imposition of the upper term did not violate appellant's Sixth Amendment right to a jury trial because at least one aggravating circumstance was established by his record of prior convictions. (*People v. Black* (2007) 41 Cal.4th 799, 816 [62 Cal.Rptr.3d 569, 161 P.3d 1130].) Appellant's record of numerous, increasingly serious convictions was an aggravating circumstance that warranted imposition of the upper term. (Cal. Rules of Court, rule 4.421(b)(2).) Between 1984 and 2005 appellant suffered convictions for prostitution (§ 647, subd. (b)), unlawful driving or taking a vehicle (Veh. Code, § 10851, subd. (a)), attempted robbery (§§ 664, 211), forgery (§ 470), theft of personal property (§ 484, subd. (a)), prison escape without force (§ 4530, subd. (b)), receiving known stolen property (§ 496, subd. (a)), taking

a vehicle without owner's consent (Veh. Code, § 10851, subd. (a)), driving under the influence of alcohol (Veh. Code, § 23152, subd. (b)) and driving without a license (Veh. Code, § 12500, subd. (a)). He also violated parole multiple times. Appellant's record of recidivism supported the upper term sentence and did not violate his right to a jury trial.

The judgment is affirmed.

Yegan, Acting P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 2008, S161406.