Filed 2/7/23  P. v. Leverette CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B317627 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA073833) |
| v. | |
| DANTE GLENN LEVERETTE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge. Sentence vacated with directions.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo, Acting Supervising Deputy Attorney General, and Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Dante Leverette got out of a car and shot at police officers during a traffic stop. A jury convicted him on three counts of attempted murder, three counts of assault with a semiautomatic firearm on a peace officer, and one count of possession of a firearm by a felon. In a prior appeal we reversed two of Leverette's convictions for attempted murder, affirmed his other convictions, and affirmed virtually all of the sentence enhancements the trial court imposed. Pursuant to our directions, the trial court resentenced Leverette.

In this appeal Leverette argues he is entitled to be resentenced again under new legislation that became effective approximately one month after the trial court resentenced him. He also argues the trial court erred by imposing the same fines and fees the court previously imposed and failing to recalculate his custody credit.

We conclude, as the People concede, that the new sentencing law applies to Leverette and that the trial court's sentence did not comply with it. We also conclude, however, contrary to the People's argument, that the trial court's error was not harmless and that under the new law the court must resentence Leverette again. Finally, we conclude, as the People again concede, the trial court must correct the amounts of the assessments the court imposed and recalculate Leverette's custody credit. Therefore, we vacate Leverette's sentence and direct the trial court to conduct a new sentencing hearing.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Leverette, a Passenger in a Car Stopped by Police, Shoots an Officer*

Late one night in May 2010, David Dearth was driving a car with Leverette in the passenger seat. Dearth was trying to buy drugs from Leverette. At some point Officer Kevin McInerney noticed the car's headlights were not on, and Dearth saw red and blue lights from McInerney's patrol car. Leverette said to Dearth, "You have a cop following you." Dearth turned on his headlights and pulled over. Leverette said, "Be cool. We weren't doing nothing wrong. You just had your lights off." (*People v. Leverette* (Jan. 12, 2021, B292120) [nonpub. opn.] (*Leverette I*).)

As Officer McInerney conducted the traffic stop, Officer Benito Seli arrived as backup, and Sergeant Robert Hernandez came to observe. Officer McInerney asked Dearth a few questions and told him to get out of the car for a field sobriety test. Leverette remained in the car. Officer Seli walked to the passenger side of Dearth's car. When Officer Seli was seven to 10 feet from Dearth's car, Leverette suddenly opened the passenger door, wedged himself against the door, and fired two shots at Officer Seli, one of which hit the officer in his lower abdomen. Leverette fled, but was captured. Officer Seli survived, but suffered serious injuries. (*Leverette I, supra,* B292120.)

B. *A Jury Convicts Leverette on All Counts, but We Reverse Two of the Attempted Murder Convictions*

A jury convicted Leverette on three counts of attempted willful, deliberate, and premeditated murder, three counts of assault with a semiautomatic firearm on a peace officer, and one count of possession of a firearm by a felon. The jury also found true allegations Leverette personally and intentionally used and discharged a firearm causing great bodily injury or death, within the meaning of Penal Code section 12022.53, subdivisions (b)-(d),[1] and section 12022.5, subdivisions (a) and (b). (*Leverette I, supra,* B292120.)

The trial court sentenced Leverette to a prison term of 120 years to life (three consecutive terms of 15 years to life for the attempted murder convictions, plus three terms of 25 years to life for the enhancements under section 12022.53, subdivision (d)), plus seven years (the upper term of three years for possession of a firearm by a felon, plus two years for an on-bail enhancement and two one-year prior prison term enhancements). The court stayed under section 654 imposition of sentences on the three convictions for assault on a peace officer with a semiautomatic firearm. (*Leverette I, supra,* B292120.)

Leverette appealed, arguing (among other things) substantial evidence did not support two of his attempted murder convictions. We reversed those two convictions, rejected Leverette's other arguments, and directed the trial court to resentence Leverette on his remaining convictions. (*Leverette I, supra,* B292120.)

---

[1] Undesignated statutory references are to the Penal Code.

4

C.    *The Trial Court Resentences Leverette and Imposes Upper Terms on Three of Leverette's Convictions*

At the resentencing hearing, the trial court cited Leverette's criminal history and said, "Defendant's been busy." In declining to exercise its discretion to strike the firearm enhancements, the trial court stated Leverette had "a lengthy, substantial, violent" criminal history, beginning at the age of 13, that included juvenile adjudications for robbery (in one of the robberies Leverette used a broken bottle as a weapon), assault with a deadly weapon, and murder. The court also recounted Leverette's criminal history as an adult, which included convictions for deterring or preventing by threat of violence an executive officer from performing the officer's duties, in violation of section 69 (Leverette fought with police officers); possession of cannabis for sale, in violation of Health and Safety Code section 11359; and making a criminal threat, in violation of section 422 (Leverette threatened to shoot his wife). Turning to the facts of this case, the court said that Leverette was the kind of person who would kill a police officer during a traffic stop and that he shot and injured a young police officer in a way that not only "harmed [him] for life," but also "crushed his soul."

The trial court sentenced Leverette to a prison term of 111 years to life. On the attempted murder conviction (for the officer Leverette hit with a bullet), the trial court imposed a term of 15 to life, plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). On two of Leverette's convictions for assault with a semiautomatic firearm on a peace officer (for the two officers Leverette did not hit), the court imposed the upper term of nine years, plus 25 years to life for the

5

firearm enhancement under section 12022.53, subdivision (d).[2] And on the conviction for possession of a firearm by a felon, the court imposed the upper term of three years.[3]

In imposing the upper terms, the trial court stated it was aware of "the new laws that [were] going to come in" and that were going to provide that "the presumptive term is the [middle] term, unless there are circumstances in aggravation that the court can point to make it the [upper] term. The court is going to find that there are aggravating circumstances, by way of the defendant's criminal history, his escalating violence, his

---

[2] See *People v. Oates* (2004) 32 Cal.4th 1048, 1054-1055 [section 12022.53 "calls for imposition of multiple subdivision (d) enhancements based on a single injury"]; *People v. Frausto* (2009) 180 Cal.App.4th 890, 899 ["By way of example: D shoots at A and B, injuring only A. D is convicted of two counts of attempted murder. The section 12022.53(d) enhancement must be imposed on the B count as well."]; see also *People v. Reyes-Tomero* (2016) 4 Cal.App.5th 369, 379["'section 654 does not preclude imposition of multiple subdivision (d) enhancements based on the single injury'"].

[3] The court did not impose (or impose and stay execution of) a term on Leverette's third conviction for assault with a semiautomatic firearm on a peace officer. On remand, the court should do that. (See *People v. Jones* (2012) 54 Cal.4th 350, 353 [correct procedure "'is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable'"]; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1466 ["when a trial court determines that section 654 applies to a particular count, the trial court must impose sentence on that count and then stay execution of that sentence"].)

continuing violence, and the vulnerability of the victims."
Leverette timely appealed.

## DISCUSSION

A.     *Amended Section 1170*

The Legislature amended section 1170, effective January 1, 2022 (Stats. 2021, ch. 731, § 1.3), to require that, as a general rule, "when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term."  (§ 1170, subd. (b)(1); see *People v. Whitmore* (2022) 80 Cal.App.5th 116, 120 ["the Legislature amended Penal Code section 1170, subdivision (b), to make the middle term the presumptive sentence unless certain circumstances exist"]; *People v. Lopez* (2022) 78 Cal.App.5th 459, 464 (*Lopez*) ["section 1170, subdivision (b) has been amended to make the middle term the presumptive sentence for a term of imprisonment"].)  The amended statute provides the court may impose the upper term only if "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(1) & (2); see *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 (*Zabelle*); *Whitmore*, at p. 131.)

Leverette contends, the People concede, and we agree that he is entitled to the benefit of the amended statute and that the trial court erred in imposing multiple upper terms without a stipulation or a jury finding true beyond a reasonable doubt the

7

facts underlying the circumstances justifying those terms. (See *Zabelle, supra,* 80 Cal.App.5th at p. 1109; *People v. Jones* (2022) 79 Cal.App.5th 37, 45.) Leverette and the People disagree, however, whether the trial court's error was harmless and whether Leverette is entitled to a new sentencing hearing under amended section 1170, subdivision (b).

The Supreme Court has granted review in *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942, to decide what standard of prejudice applies on appeal when determining whether a case should be remanded for resentencing in light of the amendments to section 1170, subdivision (b). Until the Supreme Court decides the issue, we use the harmless error test articulated by the court in *Lopez, supra,* 78 Cal.App.5th 459 and reformulated by the courts in *Zabelle, supra,* 80 Cal.App.5th 1098 and *People v. Wandrey* (2022) 80 Cal.App.5th 962 (*Wandrey*), review granted Sept. 28, 2022, S275942.

"The denial of the right to a jury trial on aggravating circumstances is reviewed under the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18." (*People v. Sandoval* (2007) 41 Cal.4th 825, 838 (*Sandoval*); see *Zabelle, supra,* 80 Cal.App.5th at p. 1110; *Wandrey, supra,* 80 Cal.App.5th at p. 981, review granted.) If the reviewing court concludes, "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Sandoval,* at p. 839; see *People v. Dunn* (2022) 81 Cal.App.5th 394, 408, review granted Oct. 12, 2022, S275655; *Zabelle,* at p. 1111.)

8

Whether a violation of section 1170, subdivision (b), is harmless is an issue of state law we review under *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Ross* (2022) 86 Cal.App.5th 1346, 1354; *Zabelle*, *supra*, 80 Cal.App.5th at p. 1110; *Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11.) In *Lopez* the court held that sentencing error under amended section 1170, subdivision (b), is harmless if the reviewing court "can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied," other than those related to the defendant's prior convictions, and that otherwise the reviewing court must determine whether it is reasonably probable the "trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied." (*Lopez*, at p. 467 & fn. 11.) In *Zabelle* the court restated this test as follows: If the trial court relied on more than one aggravating circumstance, we must determine "for each aggravating fact, . . . whether it is reasonably probable that the jury would have found the fact not true" and "then, with the aggravating facts that survive this review, . . . whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Zabelle*, at p. 1112; see *Wandrey*, *supra*, 80 Cal.App.5th at p. 982 [even if the trial court properly relied on one aggravating factor to support imposing an upper term, the reviewing court must ask "whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the

9

middle term"]; see also *People v. Dunn*, *supra*, 81 Cal.App.5th at p. 410 [stating another formulation of the harmless error test under section 1170, subdivision (b)], review granted.)

B.     *The Trial Court's Error in Resentencing Leverette Was Not Harmless*

The People argue the trial court's error was harmless because the court properly relied on Leverette's prior convictions under section 1170, subdivision (b), and "because the jury would have found the facts underlying the aggravating factor[s] true beyond a reasonable doubt had the issue been submitted for a specific jury finding." We agree with the first part of the People's argument, but not the second.

California Rules of Court, rule 4.421, lists circumstances in aggravation a court may consider in imposing the upper term.[4] The trial court specified several aggravating circumstances that supported imposing upper terms on three of Leverette's convictions. In particular, the court cited Leverette's prior convictions; his "escalating violence" (presumably of his prior convictions) (see rule 4.421(b)(2) ["the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"]); his "continuing violence" (it is unclear what the court meant by this and whether the court was referring to any of

_____

[4]     Citations to rules are to the California Rules of Court.

the circumstances in rule 4.421);[5] and the victims' vulnerability (see rule 4.421(a)(3) ["[t]he victim was particularly vulnerable"]).

Because one of the circumstances the trial court used to impose upper terms was Leverette's prior convictions, there was no constitutional violation. (See *People v. Gallardo* (2017) 4 Cal.5th 120, 138 ["a trial court can determine the fact of a prior conviction without infringing on the defendant's Sixth Amendment rights"]; see also *People v. Perez* (2018) 4 Cal.5th 1055, 1063 ["Under the Sixth Amendment, any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."]; *People v. Black* (2007) 41 Cal.4th 799, 818 ["the right to a jury trial does not apply to the fact of a prior conviction"]; *People v. Garcia* (2008) 159 Cal.App.4th 163, 172 ["Imposition of the upper term did not violate [the defendant's] Sixth Amendment right to a jury trial because at least one aggravating circumstance was established by his record of prior convictions."].) And section 1170, subdivision (b)(3), exempts prior convictions from the requirement the circumstances justifying imposition of the upper

---

[5] By "continuing violence" the trial court may have meant Leverette's violence "continued" up to the current offenses, which could have been a reference to rule 4.421(a)(1), which lists as an aggravating circumstance that the "crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." The court, however, did not state any of those things. The court also could have been referring to rule 4.421(b)(1), which lists as an aggravating factor that the "defendant has engaged in violent conduct that indicates a serious danger to society." But the court did not state that either.

11

term must be stipulated to by the defendant or found true by a jury beyond a reasonable doubt. (See *People v. Ross, supra* 86 Cal.App.5th at p. 1353 [section 1170, subdivision (b)(3), "explicitly permits a trial court to 'consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury'"]; *People v. Flowers* (2022) 81 Cal.App.5th 680, 685 ["'[t]he court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury'"], review granted October 12, 2022, S276237.)

Turning to the state law error, we can conclude it is reasonably probable a jury would have found true that Leverette's prior juvenile adjudications and adult convictions were numerous and of increasing violence. (See rule 4.421(b)(2).) As discussed, Leverette's juvenile adjudications went from robbery to assault with a deadly weapon to murder, and his criminal convictions went from resisting arrest to possession of cannabis for sale to making a criminal threat to kill his wife. Leverette's adjudications and convictions were certainly numerous and, putting aside that it is hard to commit a more violent crime than murder (which Leverette committed as a juvenile), his adjudications and convictions overall reflected increasing violence. (See *People v. Black, supra*, 41 Cal.4th at p. 818 [three prior misdemeanor convictions and two prior felony convictions were "both numerous and of increasing seriousness"]; *People v. Quiles* (2009) 177 Cal.App.4th 612, 621 [juvenile adjudications from burglary to robbery "were of increasing seriousness"]; *People v. Garcia, supra*, 159 Cal.App.4th at p. 172 [defendant's "record of numerous, increasingly serious convictions

was an aggravating circumstance that warranted imposition of the upper term"].)

But we cannot reach that conclusion for the other circumstances the court cited as bases for imposing upper terms, "continuing violence" and "vulnerability of the victims." Because it is unclear what the court meant by "continuing violence," we cannot evaluate whether it is reasonably probable a jury would find this circumstance true beyond a reasonable doubt. Regarding whether the victims were particularly vulnerable, it is certainly true that the officers were in a relatively vulnerable position as they approached Dearth's car during the traffic stop and that they did not know Leverette would jump out of the passenger side door with a semiautomatic weapon and start shooting. In addition, the trial court commented Officer Seli "was just a young officer." Yet all three victims were armed law enforcement officers, trained to respond to dangerous situations, wearing protective gear, and prepared to use lethal force. (*Leverette I, supra,* B292120.) It is reasonably probable a jury would have found the officers did not qualify as particularly vulnerable victims. (See *People v. Sandoval, supra,* 41 Cal.4th at p. 840 ["to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"]; *People v. Ross, supra,* 86 Cal.App.5th at p. 1355 [reviewing court could not "conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt the aggravating factor" in rule 4.421(a)(3) because that factor requires "a subjective evaluation as to whether the victim was

13

*particularly* vulnerable"]; see also *People v. Esquibel* (2008) 166 Cal.App.4th 539, 558 ["'a "particularly vulnerable" victim is one who is vulnerable "in a special or unusual degree, to an extent greater than in other cases"'"]; *People v. Bloom* (1983) 142 Cal.App.3d 310, 321 ["Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act."].)

Finally, because not all circumstances survive the first step of the analysis (only two of the four do), we must ask whether it is reasonably probable the trial court, had it considered only Leverette's prior convictions and escalating violence, would have chosen middle terms. (See *People v. Zabelle*, *supra*, 80 Cal.App.5th at p. 1112 ["we must consider whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error"].) It is (i.e., reasonably probable). The trial court never indicated whether any particular circumstance or circumstances were sufficient to support imposing upper terms, and the court did not indicate how much weight it gave each of the circumstances the court stated justified imposing those terms. And one of the circumstances the court relied on, "continuing violence," may not (depending on what the court meant) have been a proper aggravating factor. Therefore, Leverette is entitled to another sentencing hearing under the recent amendments to section 1170, subdivision (b). (See *Zabelle*, at p. 1115 [defendant was entitled to a new sentencing hearing where "the trial court gave no particular weight to any of its listed aggravating circumstances," and the reviewing court could not "determine whether the trial court would have issued the same sentence had it been left with" less than all the aggravating circumstances the trial court cited];

*People v. Wandrey, supra,* 80 Cal.App.5th at p. 983 ["[s]ome degree of speculation would necessarily be required for us to conclude the jury would have agreed with" the trial court's assessment the victim was particularly vulnerable "or that the trial court would have exercised its sentencing discretion in the same way if it had taken the statutory presumption in favor of the middle term into account"], review granted.)

C.     *The Trial Court Must Correct the Amount of Assessments It Imposed*

At Leverette's initial sentencing hearing, the court imposed on each of Leverette's seven convictions a $40 court operations assessment (for a total of $280) under section 1465.8 and a $30 court facilities assessment (for a total of $210) under Government Code section 70373. At the resentencing hearing the court stated that Leverette's "fees and fines are the same that were ordered before," and the abstract of judgment reflects the same amounts: $280 in court operations assessments and $210 in court facilities assessments. After we vacated two of Leverette's convictions, however, only five convictions remain. Therefore, the trial court should have imposed a total of $200 in court operations assessments under Penal Code section 1465.8 (5 x $40) and $150 in facilities assessments under Government Code section 70373 (5 x $30). The trial court must correct the abstract of judgment to reflect these amounts.

D.     *The Trial Court Must Also Recalculate Leverette's Custody Credit*

At the initial sentencing hearing the trial court awarded Leverette 3,013 days of actual credit. (See *People v. Duff* (2010)

15

50 Cal.4th 787, 793 ["At the time of sentencing, credit for time served, including conduct credit, is calculated by the court."].) At the resentencing hearing, the court did not recalculate Leverette's custody credit because the trial court believed prison officials had the responsibility to "figure out what his actual custody credits are." That was error. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 29 ["when a prison term already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody"]; *People v. Salgado* (2022) 82 Cal.App.5th 376, 381 [same].)

## DISPOSITION

The sentence is vacated.  The trial court is directed to resentence Leverette consistent with amended section 1170, subdivision (b), and any other applicable ameliorative legislation. The trial court is also directed to impose the correct amount of assessments on Leverette's convictions and to recalculate Leverette's custody credit.  Finally, the trial court is directed to prepare an amended abstract of judgment and send it to the Department of Corrections and Rehabilitation.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.

17