Filed 8/8/25  P. v. Medeiros CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>AUSTIN MICHAEL MEDEIROS,<br><br>      Defendant and Appellant. | **[PUBLIC – READACTS MATERIAL FROM SEALED RECORD]**<br><br>  A168436<br><br>  (Humboldt County<br>  Super. Ct. No. CR2201119) |
| In re AUSTIN MICHAEL MEDEIROS on Habeas Corpus. | **[PUBLIC – READACTS MATERIAL FROM SEALED RECORD]**<br><br>  A170558<br><br>  (Humboldt County<br>  Super. Ct. No. CR2201119) |

Defendant Austin Michael Medeiros was charged with first degree murder and several other offenses.  Prior to trial, he was initially found incompetent to stand trial but then restored to competency under Penal Code section 1372.[1]  After defense counsel continued to doubt Medeiros's competency, the trial court again found Medeiros competent to stand trial.

---

[1] Undesignated statutory references are to the Penal Code.

1

Following trial, a jury convicted him of all charges. On appeal, Medeiros contends the court prejudicially erred in (1) failing to reinstate the competency proceedings during trial; (2) failing to reinstate the competency proceedings after the verdict but before sentencing; and (3) refusing to appoint an expert to evaluate his competency at the competency restoration hearing. Lastly, Medeiros argues that the abstract of judgment inaccurately reflects his convictions.

Agreeing with Medeiros's second and fourth contentions, we will vacate his sentence and remand for a competency hearing and resentencing, if it is determined Medeiros is competent to be resentenced, and with directions to correct the abstract of judgment. We otherwise affirm the judgment.

In a petition for writ of habeas corpus, which we consider with the appeal, Medeiros asserts four other claims related to his competency to stand trial, including ineffective assistance of counsel. Finding that Medeiros has stated a prima facie case for relief on two of his habeas claims, we shall issue an order to show cause returnable to the superior court for those claims.

## I. BACKGROUND[2]

### A. *Medeiros's Offense-Related Delusions*

As this appeal primarily focuses on Medeiros's competency, we need not set forth the facts regarding the underlying convictions in detail. Suffice it to say that on April 3, 2022, Medeiros murdered his friend, Emily Lobba, who was disabled and had limited mobility. When Lobba's caretaker, Bailey Root,

---

[2] The record on appeal includes confidential psychological assessment reports regarding Medeiros. Accordingly, we have filed both a redacted and a sealed opinion. Our redacted opinion, which is part of the public record, does not include facts derived from the confidential documents. Our unredacted, sealed opinion is filed concurrently with this redacted opinion.

arrived at Lobba's apartment the next morning and knocked on the door, Medeiros cracked the door open and asked Root if she was part of the "Wrecking Crew." Medeiros was "pretty incoherent" and told Root that Lobba had taken his twin sister, tied her to a tree, and killed her. One of the pretrial competency reports suggests, **[REDACTED]**.

Medeiros eventually left the apartment with the keys to Lobba's vehicle. Root followed him and tried to take the keys from him, but he kicked her several times before driving away. Police saw Medeiros driving Lobba's vehicle and pursued him until he cut across oncoming traffic and sped off. After Medeiros had left, Root returned to the apartment and discovered Lobba's body.

While on the run, Medeiros told two friends he had strangled Lobba because she had participated in the torture and murder of his twin sister at a festival called "Gem & Jam." He told another person that he had killed a girl because she was involved in a gang rape of his sister.

Police apprehended Medeiros a few days later. While in custody, he attacked a correctional officer with a sharpened utensil while yelling, "You raped me." He also made several phone calls to family and friends in which he claimed that he was justified in killing Lobba because she raped and murdered his "non-biological" twin.

During a police interview, Medeiros spontaneously said "Gem and Jam." When asked about it, he said he was referring to a festival, at which he had met a group of people who told him they had thrown a body into the Santa Cruz Bay. Medeiros identified the group as the "Wrecking Crew."

An amended information charged Medeiros with murder (§ 187, subd. (a); count 1); fleeing a pursuing peace officer while driving against traffic (Veh. Code, § 2800.4; count 2); driving or taking a vehicle without

3

consent (Veh. Code, § 10851, subd. (a); count 3); assault against Root (§ 240; count 4); battery against Root (§ 242; count 5); assault upon a peace officer (§ 245, subd. (c); count 6); custodial possession of a weapon (§ 4502, subd. (a); count 7); and battery upon a custodial officer (§ 243.1; count 8). As to count 6, the information alleged that Medeiros personally used a deadly or dangerous weapon in the commission of the offense.

## B. Pretrial Competency Proceedings

In May 2022, defense counsel declared a doubt as to Medeiros's competence. (§ 1368.) On May 23, 2022, Dr. Jennifer Wilson examined Medeiros and found **[REDACTED]**. Based on this report, the trial court declared Medeiros incompetent to stand trial and ordered that he be referred to the Department of Health and Human Services (DHHS) for a medication evaluation.

In June 2022, based on a declaration submitted by the DHHS, the trial court ordered that Medeiros be subjected to involuntary antipsychotic medication.

In September 2022, the DHHS certified to the trial court that Medeiros had regained competence. (§ 1372, subd. (a)(1).) The certification was accompanied by the report of Dr. Robert E. Record, who examined Medeiros on September 20, 2022, after Medeiros had been involuntarily medicated. Dr. Record found **[REDACTED]**. Dr. Record found **[REDACTED]**.

At a hearing on October 13, 2022, the trial court, over defense counsel's objection, adopted the certification of mental competency and reinstated criminal proceedings.

Less than two weeks later, defense counsel again declared a doubt as to Medeiros's competence to stand trial. Counsel claimed that Medeiros's delusions had not abated and were interfering with his ability to rationally

4

assist in his defense.  The trial court suspended proceedings and appointed another expert to evaluate Medeiros's competency.

Dr. Kevin T. Kelly submitted his report in December 2022.  Dr. Kelly found **[REDACTED]**  While Dr. Kelly **[REDACTED]**

On December 19, 2022, both parties submitted on Dr. Kelly's report. The trial court found Medeiros competent and reinstated criminal proceedings.

### C. The Verdict and Sentencing

Trial commenced in April 2023, and Medeiros testified in his defense.

Following trial, the jury found Medeiros guilty as charged and found true the special allegation on count 6.  The trial court sentenced Medeiros to 25 years to life plus six years and four months.

## II.    DISCUSSION

### A. The Failure to Hold Another Competency Hearing

In his direct appeal, Medeiros first argues the trial court erred by failing to reinstate competency proceedings after hearing his trial testimony. He further contends that if his trial testimony did not require a new competency hearing, the court should have reinstated competency proceedings based on his post-verdict statements.  We find the latter claim meritorious but reject the former.

#### 1. Legal Standards

A defendant who, "as a result of a mental health disorder or developmental disability, . . . is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner," is incompetent to stand trial.  (§ 1367.)  " 'A trial court is required to conduct a competence hearing, sua sponte if necessary, whenever

there is substantial evidence of mental incompetence.' " (*In re Sims* (2021) 67 Cal.App.5th 762, 773.)

However, "the duty to suspend is not triggered by information that substantially duplicates evidence already considered at an earlier, formal inquiry into the defendant's competence, and that when faced with evidence of relatively minor changes in the defendant's mental state, the court may rely on a prior competency finding rather than convening a new hearing to cover largely the same ground." (*In re Sims, supra*, 67 Cal.App.5th at p. 783.) "[W]hen a defendant has already been found competent to stand trial, ' "a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding." ' " (*Ibid.*)

Further, once a defendant has been found to be competent, " 'the trial court may appropriately take its personal observations into account in determining whether there has been some significant change in the defendant's mental state,' particularly if the defendant has 'actively participated in the trial' and the trial court has had the opportunity to observe and converse with the defendant." (*People v. Rodas* (2018) 6 Cal.5th 219, 234 (*Rodas*).)

Accordingly, "[w]e apply a deferential standard of review to a trial court's ruling concerning whether another competency hearing must be held. [Citation.] We review such a determination for substantial evidence in support of it." (*People v. Huggins* (2006) 38 Cal.4th 175, 220.)

### 2. *The Trial Court Did Not Err in Denying a Competency Hearing Based on Medeiros's Trial Testimony*

Medeiros contends his trial testimony presented substantial evidence of a substantial change in circumstances and thus the trial court erred in allowing the case to proceed without holding another competency hearing. He further argues in his reply that his testimony constituted substantial evidence of incompetence and that the court abused its discretion in any event in deciding to not order a competency hearing.[3] We reject his contentions.

#### a. Medeiros's Trial Testimony

Medeiros testified in his defense at trial. He said that he was with Lobba on the day of the murder, but she dropped him off later that day at a parking lot because she was going to "do[] a big weed deal" with a man named Jeremy. After she drove off, Medeiros realized he had left his backpack and cellphone in her car, so he went to her apartment the next morning to retrieve his items. When he arrived, he saw a truck parked near Lobba's vehicle, and a man he did not recognize was sitting in the truck. There were "black totes with yellow lids" in the back of the truck, and Medeiros could smell marijuana.

Upon seeing Medeiros, the man in the truck "became frantic" and yelled out "Drift." Medeiros then saw a man, whom he recognized as his friend Jeremy Yates, run out Lobba's front door and into the truck before driving away. Medeiros entered Lobba's apartment, where he found her

---

[3] After Medeiros filed his opening brief, he requested leave to file a supplemental brief to present these arguments. Instead of granting the request, we directed him to make the arguments in his reply brief. We permitted the People to file a surreply, and they have done so.

deceased.  He immediately ran to her vehicle, retrieved his backpack, ran back into her apartment, plugged his cellphone charger into the wall, and turned his cellphone on.

According to Medeiros, Root knocked on Lobba's door as his cellphone was turning on.  Medeiros was nervous, so he cracked the door open and asked Root if she was part of the "wrecking crew" gang, which he testified was Yates's gang.  He "told [Root] a story about [his] twin sister being killed," and he "exclaimed that another tragedy had happened."  Root then pushed the door open and started attacking Medeiros with a glass bottle.  To avoid the attack, Medeiros ran to Lobba's vehicle and drove away.

After Medeiros testified about the events leading up to his capture by police, defense counsel asked him if there was anything else he wanted the jury to know.  Medeiros responded that in 2018, he met Yates and others at the "Gem & Jam" festival.  The group (presumably the so-called "wrecking crew") offered him a wolf pup and gave him gemstones.  At one point during the festival, Medeiros learned that the group had disposed of a body in the Santa Cruz Bay.  Medeiros did not believe them until he saw what happened to Lobba.  This is what prompted him to take a boat at the Santa Cruz Bay, which is where the police apprehended him.

Medeiros also testified that he believed one of the prosecution's witnesses fabricated her testimony because she had been threatened by the wrecking crew, and that he had a friend help him leave the county because he was afraid of Yates.

On cross-examination, Medeiros admitted that while in custody he told his family and friends he had strangled a girl.  He explained on redirect that he did so because he was being sexually harassed and threatened by other

8

inmates and wanted to portray himself as a dangerous person to deter them from acting on their threats.

### b. There Was No Substantial Change of Circumstances

Medeiros contends his trial testimony referred to certain characters and events—such as the wrecking crew—that were part of the delusions he expressed when he was incompetent. Because Dr. Kelly found prior to trial that **[REDACTED]**, Medeiros argues his trial testimony constitutes a substantial change in circumstances that casts doubt on the trial court's prior competency finding. We disagree.

The existence of delusional thoughts does not alone constitute substantial evidence that Medeiros had become incompetent again. (See *People v. Marks* (2003) 31 Cal.4th 197, 220 ["once a defendant has been found to be competent, even bizarre statements and actions are not enough to require a further inquiry"]; *People v. Weaver* (2001) 26 Cal.4th 876, 952–954 [delusional behavior and statements at trial insufficient to raise doubt as to competence].) The question is whether Medeiros's trial testimony disclosed "a present inability because of mental illness to participate rationally in the trial." (*People v. Deere* (1985) 41 Cal.3d 353, 358, disapproved on other grounds in *People v. Bloom* (1989) 48 Cal.3d 1194, 1228, fn. 9; see also *People v. Ramos* (2004) 34 Cal.4th 494, 508 ["a defendant must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel"].)

Despite Medeiros making a few bizarre statements during his testimony, there is no evidence his mental condition during trial prevented him from rationally assisting his counsel or understanding the proceedings.

9

The record does not show that **[REDACTED]**.  For example, the record does not reveal that **[REDACTED]**.  Nor did Medeiros exhibit **[REDACTED]**.

Rather, Medeiros's trial testimony demonstrates his ability to understand the proceedings and assist in his defense.  His testimony, if not convincing, was largely coherent, logical, and responsive to the questions asked.  The third party culpability defense he presented deviated from his prior delusional belief that he was justified in killing Lobba, and most of the bizarre statements he made when testifying were tangential to his defense.  That Medeiros's trial testimony involved some elements of his previous delusions does not alone indicate he was again incompetent.  (See *People v. Marks*, *supra*, 31 Cal.4th at p. 220; *Boyde v. Brown* (9th Cir. 2005) 404 F.3d 1159, 1166 [rejecting claim that inmate's paranoid delusions rendered him incompetent when the delusions did not limit his ability to interact with counsel or understand the proceedings].)  If anything, his attempt to come up with a more plausible and legally sound defense of the murder and an explanation for his subsequent behavior demonstrates an understanding of the nature of the criminal proceedings and of the importance of a defense, as well as **[REDACTED]**.

Further, Medeiros's trial testimony did not undermine, and was not inconsistent with, the factual basis for the prior competency finding.  As detailed in Dr. Kelly's report, **[REDACTED]**.  Although Dr. Kelly advised that **[REDACTED]**.  (See *Boyde v. Brown*, *supra*, 404 F.3d at p. 1166.)

The cases Medeiros relies on are distinguishable.  In *Rodas*, *supra*, 6 Cal.5th 219, the defendant was found incompetent to stand trial.  "After several months of treatment with antipsychotic medication, hospital physicians reported that defendant had regained trial competence."  (*Id.* at p. 223.)  This conclusion "was effectively conditioned" on defendant's

10

continued use of antipsychotic medication. (*Id.* at pp. 235, 232.) The trial court ruled defendant was competent and reinstated criminal proceedings. (*Id.* at p. 226.)

After jury selection, the trial court learned the defendant had stopped taking his medication. Defense counsel also expressed doubt as to his competency, stating that the defendant had begun communicating incoherently and exhibiting "marked disorganization to his thinking," which had led to earlier episodes of incompetence. (*Rodas*, *supra*, 6 Cal.5th at p. 224.) After a brief colloquy with defendant, the court declined to reinstate competency proceedings. (*Id.* at p. 229.) The defendant testified against his counsel's advice. The testimony was incoherent, and the trial court struck it as irrelevant. (*Id.* at pp. 223, 229.) The jury found the defendant guilty. (*Id.* at p. 230.)

The Supreme Court concluded the trial court erred in failing to suspend the criminal proceedings after defense counsel expressed doubt as to the defendant's competency. (*Rodas*, *supra*, 6 Cal.5th at pp. 231–232.) The court reasoned that the "evidence before the trial court made it unreasonable to continue to rely on the prior competence finding," because that finding was "based solely on" the defendant's continued use of his medication, and the trial court had learned the defendant had discontinued his medication and "was again displaying symptoms similar to those he exhibited during bouts of incompetence." (*Id.* at p. 235.)

In so holding, the *Rodas* court cited with approval *People v. Murdoch* (2011) 194 Cal.App.4th 230 (*Rodas*, *supra*, 6 Cal.5th at p. 236), where the doctors appointed to examine the defendant concluded he was competent, though they expressed concern that he had refused to take his prescribed medication and could, as a result, become incompetent. (*Murdoch*, at

11

pp. 232–233.) The trial court found that the defendant was competent. (*Ibid.*) Shortly thereafter, the defendant was permitted to represent himself at trial. (*Id.* at pp. 233–234.) Prior to opening statements, the defendant informed the trial court that his defense was that the alleged victim was not a human being. (*Id.* at p. 234.) To prove this, he wanted to demonstrate that the victim did not have shoulder blades. (*Ibid.*) The sole question he asked of a witness was whether the victim could shrug his shoulders. (*Id.* at p. 235.)

The appellate court held that the defendant's bizarre statements, "taken together" with the expert reports detailing the "defendant's fragile competence and its evident dependence upon continued medication," "provide[d] the substantial evidence necessary to demonstrate a reasonable doubt as to whether he had in fact decompensated and become incompetent as the experts had warned." (*People v. Murdoch, supra,* 194 Cal.App.4th at pp. 237–238.)

Likewise, in *People v. Tejeda* (2019) 40 Cal.App.5th 785, the appellate court found the trial court erred when it did not declare a doubt as to the defendant's competency after it learned at a *Marsden* hearing that defendant intended to testify " 'about why he did [the crime] as a result of a mind control program.' " (*Id.* at pp. 794, 791.) The defendant had previously been restored to competency "on the premise that he understood his delusion [about mind control] was not relevant to his defense" and that he "could set aside his delusions for purposes of assisting his counsel." (*Id.* at pp. 794, 790.) In holding that the trial court should have declared a doubt after the *Marsden* hearing, the appellate court explained that the trial court was "confronted with circumstances that were inconsistent with" the assumptions on which the defendant's competency finding had been based, namely that his restoration to competency "was expressly premised on [the doctor's] belief

that he could compartmentalize his delusion and keep it separate from his legal defense."  (*Id.* at pp. 795–796.)

Medeiros maintains that, as in *Rodas*, *Murdoch*, and *Tejeda*, the delusional thinking he exhibited at trial was inconsistent with the basis for the previous competency finding.  His argument appears to be based on the premise that his third party culpability defense, like the defendant's defense in *Murdoch* and *Tejeda*, was "rooted" in delusional thoughts because it involved Yates and the wrecking crew.

However, Medeiros points to nothing in the record showing that Yates and the wrecking crew did not exist, and his testimony about them was not, on its face, illogical, incoherent, or irrational, other than, perhaps, his brief testimony about the "Gem & Jam" festival, which comprised one paragraph out of 27 pages of testimony.  (See *Rodas*, *supra*, 6 Cal.5th at pp. 234–235 ["relatively minor changes in the defendant's mental state" insufficient to require a new competency hearing].)  In contrast, the delusions **[REDACTED]** expressed by the defendants in *Murdoch* and *Tejeda* were clearly not reality-based.  And, unlike in *Rodas*, there was no evidence that Medeiros had stopped taking his medication or was exhibiting other symptoms of his mental illness.[4]

---

[4] *People v. Melissakis* (1976) 56 Cal.App.3d 52, another case on which Medeiros relies, is also inapplicable.  In that case, two doctors, who had each testified that the defendant was competent at his initial competency hearing, changed their opinion following the defendant's trial testimony.  (*Id.* at p. 61.) The reviewing court found the trial court's failure to review the issue of competency in light of the new evidence of the defendant's irrational testimony and the doctors' resulting change of their competency opinion was error.  (*Ibid.*)  There was no comparable evidence in this case.

In light of the overall coherency of Medeiros's trial testimony and the deference owed to the trial court, we conclude substantial evidence supported the court's implicit determination that Medeiros's testimony did not present substantial evidence of a substantial change in circumstances.

### c. Medeiros's Reply Arguments

In his reply brief, Medeiros contends that even if the record does not reveal a substantial change in circumstances, his trial testimony demonstrated substantial evidence of *incompetence* because it presented an "irrational defense that was inseparable from his fixed delusions." Citing *Pate v. Robinson* (1966) 383 U.S. 375 [86 S.Ct. 836, 15 L.Ed.2d 815], he argues trial courts are required to order a competency hearing whenever the record contains substantial evidence of incompetence, even if the defendant was previously found competent to stand trial. (See *Rodas, supra*, 6 Cal.5th at pp. 231–236.) He further contends that even if his trial testimony does not constitute substantial evidence of incompetence, the court abused its discretion in deciding to not reinstate competency proceedings. Assuming Medeiros is correct regarding the application of *Pate* in the circumstances here, we disagree that the trial court erred in deciding to not order a new competency hearing based on Medeiros's trial testimony.

Once a defendant has presented substantial evidence of incompetence to stand trial, due process requires that a full competency hearing be held as a matter of right (*Pate v. Robinson, supra*, 383 U.S. at pp. 384–386), even if the evidence is in conflict (*People v. Welch* (1999) 20 Cal.4th 701, 738, overruled on other grounds in *People v. Blakely* (2000) 23 Cal.4th 82, 91–92). " 'Substantial evidence' has been defined as evidence that raises a reasonable doubt concerning the defendant's competence to stand trial." (*Ibid.*)

14

"When the evidence casting doubt on an accused's present competence is less than substantial," the trial court retains discretion to order a competency hearing. (*People v. Welch, supra,* 20 Cal.4th at p. 742.) "When the trial court's declaration of a doubt is discretionary, it is clear that 'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements' " or evidence of a preexisting psychiatric condition " 'with little reference to defendant's ability to assist in his own defense.' " (*Id.* at p. 742, citing *People v. Laudermilk* (1967) 67 Cal.2d 272, 285.)

For many of the reasons discussed above, the few seemingly delusional statements Medeiros made in his trial testimony do little to suggest he was unable to rationally assist in his defense or understand the nature of the proceedings. Evidence that "merely raises a suspicion that the defendant lacks present sanity or competence but does not disclose a present inability because of mental illness to participate rationally in the trial is not deemed 'substantial' evidence requiring a competence hearing." (*People v. Deere, supra,* 41 Cal.3d at p. 358, disapproved on other grounds in *People v. Bloom* (1989) 48 Cal.3d 1194, 1228, fn. 9.) Considering Medeiros's trial testimony was otherwise coherent, logical, and responsive to the questions asked, we conclude his testimony did not constitute substantial evidence of incompetence and that the trial court did not abuse its discretion in deciding to not hold a competency hearing.[5]

---

[5] In light of this conclusion, we need not address the parties' dispute over whether substantial evidence of incompetence must be based on expert opinion.

15

### 3. *Medeiros's Post-Verdict Statements Presented a Substantial Change in Circumstances*

Medeiros next argues that statements he made before and at the sentencing hearing presented a substantial change in circumstances requiring the trial court to reinstate competency proceedings before sentencing him. The People agree the court erred when it failed to suspend criminal proceedings based on Medeiros's post-verdict statements. The People's concession is well-taken.

" '[T]he competency right does not end at conviction,' but rather persists through sentencing" because " '[s]entencing is a critical stage of the criminal process.' " (*U.S. v. Dreyer* (9th Cir. 2013) 705 F.3d 951, 961; see *People v. Cadogan* (2009) 173 Cal.App.4th 1502, 1510 ["sentencing is a proceeding in the criminal prosecution that must be suspended until the question of competency has been determined"].) The test for competency at sentencing is " 'whether the defendant is able to understand the nature of the proceedings and participate intelligently to the extent participation is called for.' [Citation.] The ability to allocute, in short, is an essential element of this participation." (*Dreyer*, at p. 961.)

Here, comments Medeiros made shortly before and at his sentencing hearing presented a substantial change in circumstances indicating that he was no longer competent. Approximately three weeks before the sentencing hearing, Medeiros, against the advice of counsel, asked the trial court to issue a search warrant for Lobba's apartment because there was a USB drive that "contain[ed] evidence of one of the most hideous crimes that anyone has ever committed in their lives." He insisted the USB drive would "change the entire outcome of this case." Then, at sentencing, the entirety of his statement to the court reiterated his earlier delusions that he was justified in

16

murdering Lobba and in assaulting a correctional officer. He claimed he witnessed Lobba rape and kill his twin sister at the "Gem and Jam" festival in order to join a gang. He said a recording of the event could be found in Lobba's apartment. He again asked the court to issue a search warrant, and he also asked for a retrial. These statements suggest Medeiros was unable to set aside his delusions for purposes of participating in his sentencing. Thus, they provide the substantial evidence necessary to demonstrate a reasonable doubt as to whether Medeiros had become incompetent at the time of sentencing.

When presented with substantial evidence of a substantial change of circumstances, the trial court was required under section 1368 to hold a hearing and determine Medeiros's competency to be sentenced. (*People v. Jones* (1991) 53 Cal.3d 1115, 1152–1153.) There having been no such hearing, we must vacate Medeiros's sentence and remand for further proceedings. Although the People suggest the proper remedy would be to remand the matter to the trial court for a retrospective competency hearing, such a remedy is not available in this case considering "the fluctuating nature of [Medeiros's] symptoms, the passage of time, and the lack of contemporaneous expert evaluations." (*Rodas*, *supra*, 6 Cal.5th at p. 240; see *id*. at p. 241 ["when courts have permitted retrospective hearings, they have generally done so in cases involving unusual circumstances where reliable evidence of the defendant's mental condition at the time of trial would be available at the hearing"].)

Accordingly, Medeiros's sentence is vacated. Medeiros may be resentenced at a time when he is competent to be sentenced. Because we are remanding the matter for resentencing, we need not address Medeiros's claim that the trial court erred by staying the punishment on the enhancement for

17

count 6.  On remand, the parties can advance whatever arguments they wish regarding sentencing.

### B. *Failure to Appoint an Expert at the Competency Restoration Hearing*

Medeiros next challenges the trial court's approval of the DHHS's certification of restoration of competency without appointing an expert to evaluate him.  At the hearing regarding the certificate, which was supported by Dr. Record's psychological assessment report, defense counsel said he was "not prepared to submit on the report filed by the [DHHS]," and he requested that Dr. Wilson be appointed for a second opinion.  The trial court asked defense counsel "under what code section" would his request for appointment of an expert "be appropriate."  Counsel said he did not "have that in front of [him].  So I just lodge my objection for the Court.  If the Court wants to reinstate the proceedings . . . , if I still think there's an issue, I can declare a doubt once again."  Without addressing defense counsel's request any further, the court approved the certificate and reinstated criminal proceedings.

Medeiros contends the trial court's implicit denial of his request for appointment of an expert violated sections 1369 and 1372 and deprived him of his due process right to a fair restoration hearing.  He argues that reversal of the judgment is required because he was not provided a meaningful competency hearing.

We agree with the People that Medeiros has forfeited his constitutional claim because he failed to argue in the trial court that the denial of a second expert evaluation amounted to a violation of his constitutional rights.  (*People v. Panah* (2005) 35 Cal.4th 395, 435–436; see also *People v. Saunders* (1993) 5 Cal.4th 580, 590 [error must be "brought to the attention of the trial court by means of a timely and specific objection"].)

18

In arguing that his constitutional claim is not forfeited, Medeiros relies on the rule set forth in *People v. Scott* (1978) 21 Cal.3d 284, that an "objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented." (*Id.* at p. 290.) However, our Supreme Court rejected a similar argument where the record did not show that the trial court understood the objection to raise a particular legal challenge. (*People v. Diaz* (1992) 3 Cal.4th 495, 528.) In this case, the trial court's response to the request for a second expert opinion indicates that it did not understand the request as raising a constitutional challenge.

In any event, the trial court's purported error was cured by a subsequent competency hearing. Less than two weeks after the competency restoration hearing, defense counsel declared a doubt as to Medeiros's competency to stand trial at the outset of a preliminary hearing. The court suspended criminal proceedings and appointed an expert, Dr. Kelly, who submitted a detailed report **[REDACTED]**. The court **[REDACTED]**. Medeiros does not **[REDACTED]** or contend the competency hearing was inadequate, nor did he do so in the trial court. Since Medeiros was provided a meaningful competency hearing after the competency restoration hearing but before trial or any other proceeding took place, Medeiros could not have suffered harm from the failure to appoint an expert at the competency restoration hearing. (See *People v. Pokovich* (2006) 39 Cal.4th 1240, 1251, 1250 [purpose of competency proceeding is to ensure " ' "that one who is mentally unable to defend himself *not be tried* upon a criminal charge" ' " (italics added)]; *People v. McPeters* (1992) 2 Cal.4th 1148, 1169 & fn. 1, 1168 [finding no prejudice where the defendant "fail[ed] to point to any evidence that he was in fact incompetent at the time of trial"], superseded by statute

on other grounds as stated in *Verdin v Superior Court* (2008) 43 Cal.4th 1096, 1106.)

Further, an appellate court, upon finding the trial court has erred by failing to hold a competency hearing, may remand the matter for a "retrospective competency hearing," whenever such a hearing is feasible. (*People v. Ary* (2011) 51 Cal.4th 510, 513.)  A retrospective competency hearing was not only feasible in this case, but it occurred shortly after the competency restoration hearing, and with the benefit of additional and contemporaneous information about Medeiros's competency from an appointed expert.  (See *id.* at p. 520 & fn. 3 [factors to consider in determining feasibility are the passage of time, the availability of contemporaneous medical evidence, and the availability of witnesses].)  Thus, the trial court has essentially provided Medeiros with the proper remedy for its failure to appoint an expert at the competency restoration hearing.[6] Under these circumstances, to remand for further proceedings would exalt form over substance and waste judicial resources.  (See *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 [reviewing courts have consistently declined to remand cases where doing so would be an idle act that exalts form over substance], called into doubt on another ground in *People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339, fn. 6.)

Medeiros contends the trial court's error at the competency restoration hearing voided all subsequent proceedings, including the subsequent competency hearing, because the court acted in excess of its jurisdiction.  He

---

[6] For this reason, we reject Medeiros's argument that the error was reversible per se because it was structural.  Even structural error can be cured through a retrospective hearing.  (See *People v. Lightsey* (2012) 54 Cal.4th 668, 702, 709–710.)

reasons that once a court orders a competency hearing, section 1368 requires that the criminal proceedings remain suspended until competency has been determined at a hearing. Even if Medeiros was deprived of a meaningful competency restoration hearing, we disagree that the subsequent competency hearing was void.

"[T]he failure to comply with the mandate of section 1368 does not affect a fundamental loss of jurisdiction, i.e., 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.]' [Citation.] Rather, the trial court suffers an inability 'to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites,' [Citations.] Thus, while the court retains jurisdiction over the cause, it acts in excess of that authority in failing to hold a competency hearing." (*People v. Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 66, fn. omitted; see *People v. Cadogan, supra*, 173 Cal.App.4th at p. 1511 [concluding that § 1368 "does not literally suspend all proceedings pending a competency hearing"].)

Applying these principles, our Supreme Court considered whether the trial court acted in excess of jurisdiction by considering a motion for substitution of counsel after having suspended proceedings pursuant to section 1368 but before determining the defendant's competency to stand trial. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 88, abrogated on other grounds as stated in *People v. Mataele* (2022) 13 Cal.5th 372, 416–417.) The court concluded the trial court did not act in excess of jurisdiction because it "did not reinstitute 'the case against defendant' in merely entertaining" a substitution motion. (*Stankewitz*, at p. 88; see also *People v. Cadogan, supra*, 173 Cal.App.4th at pp. 1511, 1510 [although preliminary hearing, trial, and sentencing are proceedings " 'in the criminal prosecution' that must be

21

suspended until 'the question of [competency] has been determined,' " the court can still hear and rule on a motion for substitution of counsel].)

While the trial court in this case may not have had authority between the October 2022 competency restoration hearing and the December 2022 competency hearing to hold a preliminary hearing, preside over a trial, or conduct a sentencing hearing, we see no reason why the court would not have had jurisdiction to hold another competency hearing. Such a hearing is not the equivalent of proceeding with " 'the case against defendant.' " (*People v. Stankewitz, supra*, 51 Cal.3d at p. 88, abrogated on other grounds as stated in *People v. Mataele* (2022) 13 Cal.5th 372, 416–417; see also *People v. Tomas* (1977) 74 Cal.App.3d 75, 87–88 ["the trial court lacks power to try, judge or sentence defendant unless he is then presently sane"].) Therefore, the court did not lack jurisdiction when it held a competency hearing in December 2022 and determined that Medeiros was competent to stand trial.

*People v. Marks* (1988) 45 Cal.3d 1335 and *People v. Hale* (1988) 44 Cal.3d 531, relied on by Medeiros, are distinguishable. In those cases, the trial court had expressed a doubt about the defendant's competency to stand trial but failed to hold a competency hearing at any point before or during trial. Because the trial court had "no jurisdiction *to proceed with the case against the defendant* without first determining his competence," the failure to hold a competency hearing required reversal of the judgment. (*Hale*, at pp. 541–542, italics added; *Marks*, at pp. 1340–1344.) In contrast, here, the trial court did not proceed with the case against Medeiros before determining whether he was competent to stand trial at a competency hearing.

## C. Error in the Abstract of Judgment

Medeiros was convicted on count 7 of violating section 4502, subdivision (a), but the abstract of judgment incorrectly states that he was

convicted of violating subdivision (b) of section 4502. The parties agree that the abstract of judgment should be amended to correct the error. This court has inherent power to order the correction of clerical errors in an abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, we will direct the trial court to correct the abstract of judgment to reflect that pursuant to count 7 Medeiros was convicted of violating subdivision (a) of section 4502.

### D. Habeas Petition

Medeiros has filed a petition for a writ of habeas corpus, in which he asserts four grounds for the issuance of an order to show cause (OSC): (1) his trial counsel, Owen Tipps, rendered ineffective assistance of counsel by failing to investigate Medeiros's competency to stand trial before submitting on Dr. Kelly's report at the December 2022 competency hearing; (2) Tipps rendered ineffective assistance of counsel by failing to investigate Medeiros's competency to stand trial during the April 2023 trial; (3) Tipps rendered ineffective assistance of counsel by failing to request a new competency hearing during the trial; and (4) Medeiros's constitutional rights were violated because he was not competent to stand trial. Medeiros submits with his petition the declarations of Tipps, his appellate counsel, his brother, Eric Hall, and his parents, and a retrospective competency report from Dr. Bruce Yanofsky.[7]

"Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove*

---

[7] We grant Medeiros's unopposed request for judicial notice of the appellate record in his direct appeal (case No. A168436).

them." (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) We evaluate such a petition by "asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief. [Citations.] If no prima facie case for relief is stated, the court will summarily deny the petition. If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC." (*Id.* at pp. 474–475.) "Issuance of an OSC, therefore, indicates the issuing court's preliminary assessment that the petitioner would be entitled to relief if his factual allegations are proved." (*Id.* at p. 475, italics omitted.)

To satisfy the initial burden of pleading adequate grounds for relief, the habeas petition must "state fully and with particularity the facts on which relief is sought" and "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." (*People v. Duvall*, *supra*, 9 Cal.4th at p. 474.) " 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' " (*Ibid.*)

To assist us in determining the petition's sufficiency, the People have filed an informal response. (*People v. Romero* (1994) 8 Cal.4th 728, 737.)

Before evaluating Medeiros's petition to determine whether he has stated a prima facie case for relief on his claims, we address some evidentiary issues raised by the parties that affect the scope of our review.

### 1. Evidentiary Issues

In their informal response, the People claim that some of the declarations supporting Medeiros's habeas petition contain inadmissible hearsay that should be disregarded by this court. Specifically, they point to statements in Tipps and Hall's declarations that Medeiros refused to plead

not guilty by reason of insanity or present an insanity defense.  The People further point to statements in appellate counsel and Hall's declarations describing statements made by Tipps, including Tipps's purported rationales for not investigating Medeiros's competency.

An out of court statement, offered for its truth, is hearsay.  (Evid. Code, § 1200.)  We agree with the People that the portions of Tipps and Hall's declarations referring to Medeiros's refusal to plead not guilty by reason of insanity or present an insanity defense constitute inadmissible hearsay because "the theory of relevance"—that Medeiros's delusional thinking was affecting his decision-making—depends on the truth of the statements, i.e., that Medeiros did, in fact, refuse to consider an insanity defense and a not guilty by reason of insanity plea.  (*People v. Wilson* (2024) 16 Cal.5th 874, 929.)  Likewise, the statements in appellate counsel and Hall's declarations relaying statements made by Tipps constitute hearsay because they are being offered for the truth of the matter asserted.  (Evid. Code, § 1200.)

Medeiros acknowledges that some of his evidence may be hearsay but contends this court should consider the evidence anyway because he need only *plead* sufficient grounds for relief at the prima facie stage of the habeas proceeding.  According to Medeiros, the purpose of providing supporting documentation at this preliminary stage is to "persuade the court of the bona fides of the [factual] allegations" in the petition (*In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 2), which apparently means the documentation supporting a habeas petition may consist of hearsay declarations.  Medeiros's contention fails.

A petition for habeas corpus "must be verified by the oath or affirmation of the party making the application."  (§ 1474, subd. (3).)  "It has long been the rule of California that factual allegations on which a petition

25

for habeas corpus are based must be 'in such form that perjury may be assigned upon the allegations if they are false.' " (*People v. Madaris* (1981) 122 Cal.App.3d 234, 242, disapproved of on other grounds in *People v. Barrick* (1982) 33 Cal.3d 115, 127; accord, *People v. McCarthy* (1986) 176 Cal.App.3d 593, 597.)

As such, "[v]erification, under the statute, manifestly requires that all factual matters relied upon be stated *by their declarant*, whomsoever he may be, under oath." (*People v. Madaris*, *supra*, 122 Cal.App.3d at p. 241, original italics omitted & italics added.) Applying this requirement, the *Madaris* court determined that the defendant failed to make a prima facie case for relief because his habeas petition was supported by unsworn statements and a declaration containing hearsay. (*Id.* at p. 242.)

Further, while Medeiros may be correct that he need not "prove" his habeas claims at this stage in the proceeding, "the prima facie inquiry is more demanding than the inquiry into facial validity" of the petition. (*People v. Patton* (2025) 17 Cal.5th 549, 566.) "[A] 'prima facie showing' [normally] connotes *an evidentiary showing* that is made without regard to credibility. . . . [¶] This is particularly true when [as here] the prima facie showing merely triggers an evidentiary hearing, at which any necessary credibility determinations can still be made." (*People v. Johnson* (2015) 242 Cal.App.4th 1155, 1163, italics added; see *In re Lawley* (2008) 42 Cal.4th 1231, 1241 [" 'The central reason for referring a habeas corpus claim for an evidentiary hearing is to obtain credibility determinations' "].)

As support for his argument, Medeiros cites cases where the reviewing court considered hearsay evidence in determining whether an OSC should issue on a habeas petition. (See *In re Malone* (1996) 12 Cal.4th 935, 944; *In re Avena* (1996) 12 Cal.4th 694, 755–756 (dis. opn. of Mosk, J.); *In re Seaton*

(2004) 34 Cal.4th 193, 204.) However, none of those cases involved an objection to hearsay allegations in the petition or to the evidence supporting the petition. Nor did the reviewing courts address the question whether a defendant is required to support a habeas petition with non-hearsay allegations and declarations. "Cases do not stand for propositions that were never considered by the court." (*Mares v. Baughman* (2001) 92 Cal.App.4th 672, 679.)

Accordingly, in reviewing Medeiros's petition, we will disregard the hearsay contained in the declarations of Hall, Tipps, and appellate counsel, as described above. With this in mind, we next consider whether Medeiros has stated a prima facie case on his habeas claims, beginning with his ineffective assistance of counsel claims.

### 2. General Principles for Ineffective Assistance of Counsel

The court in *Strickland v. Washington* (1984) 466 U.S. 668 [104 S.Ct. 2025, 80 L.Ed.2d 674] (*Strickland*) established a two-part test for determining ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient." (*Id.* at p. 687.) When determining whether counsel's performance was deficient, we begin with "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Id.* at p. 689.) To establish deficient performance, "a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness,' " as measured by " 'prevailing professional norms.' " (*Wiggins v. Smith* (2003) 539 U.S. 510, 521 [123 S.Ct. 2527, 156 L.Ed.2d 471].) "When applying this standard, we ask whether any reasonably competent counsel would have done as counsel did." (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

27

"Second, the defendant must show that the deficient performance prejudiced the defense." (*Strickland, supra*, 466 U.S. at p. 687.) A defendant establishes prejudice by demonstrating that without the deficient performance, there is a reasonable probability the result would have been favorable. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.) A defendant must prove prejudice that is a " 'demonstrable reality,' not simply speculation." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

### 3. *Grounds One and Two: Failure to Investigate Competency*

The first two grounds asserted in Medeiros's habeas petition concern Tipps's failure to investigate Medeiros's competency prior to and during trial. Medeiros argues the failures to investigate constitute ineffective assistance of counsel and were prejudicial.

### a. Legal Principles

As previously discussed, constitutional due process principles forbid a court from trying or convicting a defendant who is mentally incompetent to stand trial. (*People v. Mickel* (2016) 2 Cal.5th 181, 194.) A defendant is competent to stand trial when he has a " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' " and " 'a rational as well as factual understanding of the proceedings against him.' " (*Dusky v. U.S.* (1960) 362 U.S. 402 [80 S.Ct. 788, 4 L.Ed.2d 824.) The defendant is presumed competent and bears the burden of proving otherwise. (§ 1369, subd. (c)(3).)

We measure the sufficiency of counsel's investigation of Medeiros's competency according to an objective standard of reasonableness in light of the prevailing professional norms. (*In re Gay, supra*, 8 Cal.5th at p. 1077.) Under this standard, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations

28

unnecessary." (*Strickland, supra,* 466 U.S. at p. 691; *People v. Jones* (2010) 186 Cal.App.4th 216, 237–238.) What is reasonable is viewed from counsel's perspective at the time of his challenged omission. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1243, abrogated by statute on other grounds as stated in *Satele v. Superior Court* (2019) 7 Cal.5th 852, 857; see, e.g., *Jones v. Page* (7th Cir. 1996) 76 F.3d 831, 842–843 [limited inquiry into client's mental state not ineffective assistance of counsel where client's behavior gave no reason to question competency].)

In this case, Medeiros is claiming Tipps failed to conduct *any* investigation regarding his competency to stand trial. To establish that investigative omissions were constitutionally ineffective, Medeiros must show that Tipps knew or should have known that further investigation could turn up materially favorable evidence, and he "must establish the nature and relevance of the evidence that counsel failed to present or discover." (*People v. Williams, supra,* 44 Cal.3d at p. 937.)

Where defense counsel is found to have performed deficiently by failing to investigate, courts undertake a multi-part analysis to determine prejudice. Courts examine "what 'evidence counsel failed to discover and present in [the] case' and whether there is 'a reasonable probability that a competent attorney . . . would have introduced it.' " (*In re Long* (2020) 10 Cal.5th 764, 778.) Then, courts address whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the competency proceeding. (*Strickland, supra,* 466 U.S. at p. 694; *Dixon v. Ryan* (9th Cir. 2019) 932 F.3d 789, 802.)

29

### b. Ground One Analysis

The first ground asserted in Medeiros's habeas petition is that Tipps rendered ineffective assistance of counsel by failing to investigate Medeiros's competency before deciding to submit on Dr. Kelly's report at the December 2022 competency hearing. In so arguing, Medeiros points out that at the time Dr. Kelly submitted his report to the court, Tipps was aware of Medeiros's offense-related delusions and that Medeiros had recently expressed those delusions to Hall and Tipps. Based on these facts, Medeiros concludes a reasonable attorney in Tipps's position would have at least interviewed Medeiros's parents, reviewed his recent jail psychiatric records, and relayed the investigation findings to Dr. Kelly.

Although the allegations in the petition, if taken as true, demonstrate Tipps did not speak with Medeiros's parents or review his jail medical records, we are not convinced that the failure to do so amounted to deficient performance, considering all the circumstances at that time.[8] The trial court **[REDACTED]**. Moreover, Dr. Kelly **[REDACTED]** within a three-month period following the trial court's order for involuntary antipsychotic medication.

According to the petition, the only additional information Tipps had at the time of the December 2022 competency hearing was some details about Medeiros's past delusions and the fact that Medeiros had expressed delusions

---

[8] Although the People dispute whether Medeiros has adequately alleged Tipps's failure to investigate Medeiros's competency to stand trial, the declarations of Medeiros's parents establish that Tipps never contacted them. Additionally, Tipps stated in his declaration that he provided Medeiros's appellate attorney his entire case file. Appellate counsel has declared that Tipps's case file did not contain any evidence pertaining to Medeiros's competency, such as his mental health records.

to Hall on a phone call a few weeks before Dr. Kelly's evaluation. In light of Dr. Kelly's report, however, these facts alone would not have put Tipps on notice that further investigation may reveal materially favorable evidence. (See *People v. Garcia* (2008) 159 Cal.App.4th 163, 172, 171 [trial counsel "was not required to conduct further investigation after the court-appointed expert resolved his doubts"]; *People v. Hill* (1967) 67 Cal.2d 105, 115.) Dr. Kelly **[REDACTED]**. Dr. Kelly also **[REDACTED]**. Thus, Medeiros's competency at the time of the evaluation, and not past events, was the focus of the competency proceedings. (*People v. Hayes* (1999) 21 Cal.4th 1211, 1281 ["Evidence regarding past events that does no more than form the basis for speculation regarding possible current incompetence is not sufficient"]; *People v. Ramos*, *supra*, 34 Cal.4th at p. 508 [standard for incompetence is not met by simply offering " 'a litany of facts, none of which actually related to his competence at the time of [the proceeding] to understand the nature of that proceeding or to rationally assist his counsel at that proceeding' "].)

Considering the comprehensive nature of Dr. Kelly's evaluation, **[REDACTED]**, we do not see how a phone call between Hall and Medeiros nearly a month earlier would have put Tipps on notice that further investigation may reveal evidence that would undermine Dr. Kelly's conclusions, especially since the phone call was cumulative of Tipps's claim that Medeiros was delusional. Although Tipps disagreed with Dr. Kelly's opinion, nothing in the petition suggests Tipps was aware of other facts not known to Dr. Kelly that would suggest further investigation of Medeiros's competency would be fruitful.[9]

---

[9] *People v. Corona* (1978) 80 Cal.App.3d 684, cited by Medeiros, is clearly distinguishable because defense counsel in that case opposed a

31

Nonetheless, Medeiros argues that Tipps should have realized that Medeiros was either "faking good" during his interview with Dr. Kelly or decompensating in between competency evaluations. We disagree. First, for the theory that he was "faking good," Medeiros cites *People v. Tejeda, supra,* 40 Cal.App.5th 785, where a psychologist opined that the defendant was suppressing his delusions during the competency evaluation so as not to be viewed as mentally ill. (*Id.* at p. 789.) The psychologist also believed that the defendant's delusions affected his ability to rationally consult with his attorney. (*Ibid.*) While Dr. Kelly **[REDACTED]**. "To be reasonably effective, counsel was not required to second-guess the contents of [a qualified expert's] report" (*Wilson v. Greene* (4th Cir. 1998) 155 F.3d 396, 403) or "seek repetitive examinations of the defendant until an expert is found who will offer a supportive opinion" (*People v. Williams, supra,* 44 Cal.3d at pp. 945, 944).

Second, Dr. Kelly **[REDACTED]**. (See *People v. Ramos, supra,* 34 Cal.4th at p. 508 [to be deemed incompetent, "a defendant must exhibit more than . . . a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel"].) Dr. Kelly **[REDACTED]**. Thus, even if Tipps believed that Medeiros had decompensated prior to Dr. Kelly's evaluation, Dr. Kelly's report resolved any doubt that Medeiros was still incompetent at the time of the December 2022 competency hearing. (*People v. Garcia, supra,* 159 Cal.App.4th at pp. 171–172.)

---

competency hearing and forbade further psychiatric evaluations to protect an exclusive book deal he had reached with his client. (*Id.* at pp. 714, 720.)

While it may be easy to conclude in hindsight that Tipps could have been more thorough in investigating Medeiros's competency, the question we must answer is whether Medeiros has sufficiently rebutted the "strong presumption" that counsel's representation "was within the wide range of reasonable professional assistance." (*Strickland, supra,* 466 U.S. at pp. 689, 688; *id.* at p. 689 [courts must evaluate counsel's conduct without the benefit of hindsight]; *In re Grissom* (1978) 85 Cal.App.3d 840, 846 ["A defendant is constitutionally entitled to counsel who is reasonably effective, not one who is errorless."].) Viewing the circumstances from Tipps's perspective (*Strickland,* at p. 689), we conclude he was not ineffective for failing to interview Medeiros's parents or subpoena Medeiros's jail psychiatric records for the December 2022 competency hearing.[10]

### c. Ground Two Analysis

Medeiros next asserts Tipps was ineffective by failing to investigate his competence to stand trial before deciding to not request a new competency hearing during the April 2023 trial. The People agree the petition states a prima facie case for relief on Medeiros's second claim.

Where, as here, a competency hearing has been held and the defendant found competent to stand trial, the trial court is required to hold another competency hearing only if it is presented with substantial evidence of "a substantial change of circumstances or new evidence . . . casting serious doubt on the validity of the prior finding of the defendant's competence."

---

[10] We need not reach the prejudice prong of the analysis, but we question whether there is a reasonable probability competent counsel would have produced the jail psychiatric records as evidence at the competency hearing (*In re Long, supra,* 10 Cal.5th at p. 778), since those records show the jail psychiatrist found **[REDACTED]**.

33

(*People v. Medina* (1995) 11 Cal.4th 694, 734; *People v. Kaplan* (2007) 149 Cal.App.4th 372, 384–385.) But "[c]ompetent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances." (*People v. Freeman* (1994) 8 Cal.4th 450, 509.)

Thus, at the first step of the *Strickland* analysis, in determining whether Tipps was deficient in failing to move for another competency hearing, the question is whether Tipps should have known that further investigation of Medeiros's competency to stand trial may reveal material evidence that casts doubt on the continued validity of the prior competency finding. (*People v. Gonzalez, supra*, 51 Cal.3d at p. 1244.)

Medeiros contends Tipps was aware of evidence that would have led a reasonable attorney to investigate before deciding to not request another competency hearing. This evidence includes Hall's declaration, which states that Hall called Tipps in March 2023 and told him that earlier that month, Medeiros had said he was justified in killing Lobba and that there was evidence hidden in Lobba's apartment that would exonerate him. Medeiros further alleges he gave Tipps two letters sometime between January and March 2023. The letters present a narrative of the offenses and are largely consistent with Medeiros's trial testimony, but one of the letters asserted his delusional beliefs that his twin sister was murdered and that he was drugged and raped by the correctional officer he assaulted.

Based on this evidence, we agree with the parties that Medeiros made a prima facie showing that Tipps did not exercise reasonable professional judgment in relying solely on his phone call with Hall and the two letters he

34

received from Medeiros in deciding to not request another competency hearing. (See *Williamson v. Ward* (10th Cir. 1997) 110 F.3d 1508, 1518 [concluding that a reasonable attorney would have investigated further before deciding to forego a competency determination].) Dr. Kelly's evaluation was nearly five months old at the time trial commenced. Considering the fluctuating nature of Medeiros's mental health symptoms, of which Tipps was aware, the fact that Medeiros was again expressing some of his offense-related delusions to counsel and others should have at least raised a suspicion that Medeiros lacked present competence. Further, Tipps met with Medeiros only a few times after the December 2022 competency hearing and therefore did not have much of an opportunity to assess whether Medeiros was able to rationally assist in his defense. (See *People v. Rogers* (2006) 39 Cal.4th 826, 848 [trial counsel is usually "in the best position to evaluate whether the defendant is able to participate meaningfully in the proceedings" because he or she interacts with the defendant daily].) Under these circumstances, Tipps should have realized that further investigation of Medeiros's competency was warranted.

We therefore turn to the prejudice prong of the *Strickland* inquiry to determine whether there is a reasonable probability that competent counsel would have produced the evidence trial counsel failed to uncover (*In re Long*, *supra*, 10 Cal.5th at p. 778), and whether there is a reasonable probability that the defendant would have been found incompetent at a new competency hearing (*Dixon v. Ryan*, *supra*, 932 F.3d at p. 802).

The petition shows that had Tipps investigated the readily available sources of information regarding Medeiros's present competency (*Hall v. Washington* (7th Cir. 1997) 106 F.3d 742, 749), he would have discovered substantial evidence casting a serious doubt on whether Medeiros could

35

rationally assist in his defense. First, Medeiros called his parents over 130 times from the December 2022 competency hearing to the end of trial. In most of those calls, Medeiros was not only delusional but, as shown by his father's declaration, was also exhibiting some of the symptoms that were present when he was found incompetent. He was angered when his delusional beliefs were challenged, his thoughts "did not follow a rational order" and were hard to follow, and he "remained fixated on his delusional beliefs" about the offenses. Second, had Tipps contacted Dr. Kelly, he would have learned that Dr. Kelly **[REDACTED]** if he had known about the content of the letters Tipps received from Medeiros and of the calls between Medeiros and his parents.

There is a reasonable probability that had Tipps been in possession of this evidence, he would not have decided against requesting a new competency hearing. (See *Williamson v. Ward*, *supra*, 110 F.3d at p. 1519.)

Further, Medeiros has presented evidence which, if credited, suggests there is a reasonable probability he would have been found incompetent at a new competency hearing.[11] As explained in Dr. Yanofsky's report, the facts known to Tipps and the facts he would have discovered through a reasonable investigation indicate that Medeiros's behavior leading up to trial reflected active delusions, poor decision-making, and impairment in his ability to think

---

[11] While we have concluded in the direct appeal that Medeiros's trial testimony alone did not constitute substantial evidence of incompetence or a substantial change in circumstances, that does not negate the existence of other substantial evidence casting doubt on the validity of the prior competency finding. (See *Rodas*, *supra*, 6 Cal.5th at pp. 234, 233 ["when substantial evidence of incompetence otherwise exists, a competency hearing is required even though the defendant may display 'mental alertness and understanding' in his colloquies with the trial judge"].)

rationally. Dr. Yanofsky also noted that, based on Medeiros's jail psychiatric records from May 2023, **[REDACTED]**, which was significant because both Drs. Record and Kelly believed **[REDACTED]**. These facts are "sufficient to undermine [our] confidence" in the likelihood that Medeiros would be found competent to stand trial at a new competency hearing. (*Strickland*, *supra*, 466 U.S. at p. 694.)

Accepting the allegations in Medeiros's habeas petition as true, we accept the People's concession that Medeiros has made a prima facie case for relief on his second habeas claim. Because Medeiros's entitlement to relief on this claim likely depends on the resolution of issues of fact, we agree with the parties that it is necessary to issue an order to show cause returnable on the superior court. (See *In re Hillery* (1962) 202 Cal.App.2d 293, 294.)

### 4. Ground Three: Failure to Request a Competency Hearing

Medeiros further argues that, regardless of any failure to investigate, Tipps rendered ineffective assistance by failing to request a new competency hearing during the April 2023 trial. We disagree.

To prevail on this claim, Medeiros must establish that the facts known to Tipps at the time of the trial (i.e., Medeiros's past delusions, the two letters Medeiros gave to Tipps in the months before trial, and the delusions Medeiros expressed to Hall) constitute substantial evidence of incompetence. "If an attorney has doubts about his client's competence but those doubts are not supported by medical reports or substantial evidence, he does not render ineffective assistance by forgoing an evidentiary hearing." (*People v. Garcia*, *supra*, 159 Cal.App.4th at p. 172.)

Under the substantial evidence test, "more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in

37

his defense." (*People v. Laudermilk, supra*, 67 Cal.2d at p. 285.)  "[E]vidence which raised merely suspicion of lack of present sanity, but which did not purport to state facts of a present lack of ability through mental illness to participate rationally in a trial is held not to be substantial evidence of lack of present sanity." (*People v. Humphrey* (1975) 45 Cal.App.3d 32, 37.)  "[W]hen faced with evidence of relatively minor changes in the defendant's mental state, the court may rely on a prior competency finding rather than convening a new hearing to cover largely the same ground." (*Rodas, supra*, 6 Cal.5th at pp. 234–235.)

The allegations in Medeiros's habeas petition do not satisfy the substantial evidence test.  As alleged, the facts known to Tipps at the time of trial do little more than demonstrate the existence of Medeiros's delusions. (See *People v. Ghobrial* (2018) 5 Cal.5th 250, 270 [evidence must go to competency to stand trial rather than merely establishing existence of mental illness that could influence competency].)  Neither the letters to Tipps nor Hall's declaration indicate whether Medeiros lacked the ability to communicate effectively with defense counsel or understand the criminal proceedings.  (See *Boyde v. Brown, supra*, 404 F.3d at p. 1166; *People v. Dudley* (1978) 81 Cal.App.3d 866, 872 ["The evidence must indicate that defendant is incapable of comprehending the charges against him and of cooperating with counsel in his defense."].)  Aside from a few seemingly delusional statements, the letters to Tipps presented a largely coherent narrative of the offenses.  Thus, while this evidence may have raised a suspicion of incompetence, it did not constitute substantial evidence of incompetence.  (See *People v. Hines* (2020) 58 Cal.App.5th 583, 605 [defendant's "seemingly delusional outbursts" were "enough to raise concern"

but did not, "on their own, constitute substantial evidence compelling a competency hearing"].)

Therefore, the facts known to Tipps at the time of trial, as alleged in the petition, do not demonstrate that he was deficient in failing to move for a new competency hearing. We therefore deny the petition as to Medeiros's third habeas claim.

### 5. *Ground Four: Medeiros's Competency During Trial*

Finally, Medeiros contends he was incompetent during the April 2023 trial. The People agree that Medeiros has stated a prima facie case for relief on this ground. The People's concession is well-taken. As discussed above with respect to Medeiros's second habeas claim, his father's declaration, the facts detailed in Dr. Yanofsky's report, and **[REDACTED]** suggest that Medeiros was, in fact, incompetent during trial. We will therefore issue an order to show cause returnable to the superior court on this claim.

## III. DISPOSITION

In appeal No. A168436, Medeiros's sentence is vacated, and the matter is remanded for a competency hearing and resentencing, if Medeiros is found competent to be resentenced. Upon resentencing, the new abstract of judgment is to reflect that the conviction under count 7 is based on section 4502, subdivision (a). The judgment is affirmed in all other respects.

In the Petition for Writ of Habeas Corpus, case No. A170558, we hereby issue an order to show cause, returnable to the Superior Court of Humboldt County on the issues of whether Medeiros's counsel rendered ineffective assistance in failing to investigate Medeiros's competency to stand trial before deciding to not request a competency hearing during the April 2023 trial and whether Medeiros was competent to stand trial during the April 2023 trial.

LANGHORNE WILSON, J.

WE CONCUR:

BANKE, ACTING P. J.

SMILEY, J.

A168436
*People v. Medeiros*

A170558
*In re Medeiros*